Gilliland *et al. v.* Jones, Executor.

No. 17,722.

GILLILAND ET AL. *v.* JONES, EXECUTOR.

FRAUDULENT CONVEYANCE.—*Voluntary Grantee.—Cannot Hold as Against Subsequent or Existing Creditors.*—The rule that a voluntary grantee cannot hold against creditors of a grantor, although he possessed no knowledge of the grantor's fraudulent intent to cheat, hinder or delay such creditors, applies to subsequent as well as existing creditors.

PLEADING.—*Sustaining Demurrer to Complaint.—Action to Set Aside Fraudulent Conveyance.—Grantee's Knowledge of Fraudulent Intent.*—Improperly sustaining a demurrer to an original complaint in an action by a creditor to set aside a voluntary conveyance by his debtor, as fraudulent, because it fails to allege that the grantee had knowledge of the fraudulent intent, is not prejudicial, where, upon a trial under an additional paragraph of the complaint subsequently filed supplying such averment, it was specially found that the grantor did not make the conveyance with fraudulent intent, in view of section 401, R. S. 1894, providing that the court must in every stage of the action disregard any error not affecting a substantial right.

APPELLATE PROCEDURE.— *Demurrer.— Special Findings.*— The supreme court may look to the special finding of facts in order to determine whether the ruling on a demurrer was prejudicial to the complaining party.

From the Marion Superior Court.

*H. J. Milligan,* for appellants.

*Knefler & Berryhill,* for appellee.

HACKNEY, C. J.—This was a suit by the appellee to set aside as fraudulent a conveyance of real estate made to the appellants, it was alleged, as volunteers. The lower court, in special term, sustained a demurrer to the original complaint, consisting of a single paragraph; thereupon the appellee filed an additional

paragraph of complaint, upon which issue was joined and a trial had, resulting in a special finding, with conclusions of law and a decree in favor of the appellants. From that decree there was an appeal to the general term of said court, where the decree was reversed for error in sustaining said demurrer. From that reversal the appellants have appealed to this court. The question for decision by this court is, therefore, as to the sufficiency of said complaint.

The appellee's claim arose subsequent to the conveyance in question and the complaint contained no allegation that the grantees knew of or participated in the alleged fraudulent intent of the grantor. Counsel for appellants concede the ordinary rule that a voluntary grantee cannot hold against existing creditors, although he possessed no knowledge of the grantor's fraudulent intent to cheat, hinder or delay such creditors, but it is insisted that this rule does not apply to subsequent creditors. To this insistence are cited the cases of *Bishop* v. *Redmond,* 83 Ind. 157; *Stumph* v. *Bruner,* 89 Ind. 556; *Plunkett* v. *Plunkett,* 114 Ind. 484; *Bright* v. *Bright,* 132 Ind. 56. We have carefully examined these cases and do not find that they lend any support to the proposition here presented. There are expressions in the cases to the effect that the mere want of consideration is not enough, and that there must be some badge of positive fraud. These expressions, however, were not employed with reference to the participancy of the grantee. Nor do we find any decision of this court or any other holding that the voluntary grantee must participate in the fraudulent intention and purpose of the grantor. With reference to existing creditors, the rule is settled in this State that the voluntary grantee takes no valid title as against them, regardless of the question of his knowledge or fraudulent intent. *Milburn* v. *Phillips,*

136 Ind. 680; *Roberts* v. *Farmers, etc., Bank,* 136 Ind. 154; *York* v. *Rockwood,* 132 Ind. 358; *McAninch* v. *Dennis,* 123 Ind. 21; *Bishop* v. *State, ex rel.,* 83 Ind. 67; *McCole* v. *Loehr,* 79 Ind. 430; *Spaulding* v. *Blythe,* 73 Ind. 93.

In May Fraud. Conv., section 45, it is said: "In cases of voluntary conveyances it matters not whether or not the donee had knowledge or notice of the fraudulent intent, for they are not within the exception in favor of *bona fide* purchasers by persons 'not having, at the time of such conveyance or assurance to them made, any manner of notice or knowledge of such covin, fraud or collusion.' Where the conveyance is *voluntary* it is the motive of the giver, not the knowledge of the acceptor, that is to weigh; for volunteers cannot be said to be injured by the gift to them being defeated; * * they are only deprived of a gain to which others had a better right." In Bump Fraud. Conv., pp. 267, 268 (3d Ed.), it is said: "If there is an actual intent to hinder, delay, or defraud creditors, on the part of the grantor, then the law relating to fraudulent conveyances, as distinguished from mere voluntary conveyances, is applicable. It follows from the definition of a voluntary conveyance that the question in regard to its validity or invalidity depends upon the intent of the party making it, and not on the motive with which it is received. * * * It is the innocent purchaser and not the innocent donee that is protected. The only question is *quo animo* the gift or grant is made. It is the motive of the giver and not the knowledge of the acceptor that is to determine the validity of the transfer. * * * * A donee, who sets up a voluntary conveyance when it would, if established, defeat creditors, participates in and carries out the intent of the donor." Again,

on page 272, this author says: "The law stamps a man's generosity with the name of fraud when it prevents him from acting fairly towards his creditors, and presumes fraud if he disables himself from paying his debts.   In such cases the presumption of fraud arises and may exist without the imputation of moral turpitude.   The principle is that persons must be just before they can be generous, and that debts must be paid before gifts can be made."

Speaking of the English statutes on the subject, and these statutes have frequently been held to have but declared the rules of the common law, the author just quoted says:  "The statute embraces not merely conveyances made with intent to delay, hinder or defraud creditors, but conveyances, made to  *  *  defraud others.   The word 'others' is inserted to take in all manner of persons, as well creditors after as before the conveyance, whose debts should be defrauded. *  *  *  It is accordingly well settled that if a party makes a conveyance of his property with the express intent to become indebted to another, and to defraud him of his debt by means of this artifice, such subsequent creditor may contest and by proof defeat the transfer, although he was not a creditor of the grantor at the time of the conveyance," p. 315.   The rules, and the reason therefor, thus stated, leave no room to distinguish between prior and subsequent creditors as to any requirement that the grantee shall be shown to have acted with knowledge of and participancy in the fraudulent intent of the grantor.   Nor do we believe that any such distinction can be sustained upon authority.

The additional paragraph of complaint differed from the original paragraph only in alleging the knowledge of the grantees of the fraudulent intent of the grantor.  A fact specially found was that the

grantor did not make the conveyance with fraudulent intent. From this fact it is urged that the ruling upon demurrer to the original paragraph of complaint was harmless. By section 401, R. S. 1894, it is provided that "The court must, in every stage of the action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect." In the presence of the fact so specially found it cannot be doubted that the appellee would have failed upon his original paragraph of complaint. That fact would have defeated his cause of action in whatever form it could have been pleaded, and it was a fact upon which the two paragraphs did not differ. The appellee, as to that fact, was not deprived of any evidence nor misled in any respect by the ruling upon demurrer. If there had been a general finding, we could not know that the appellee's failure was not due to the want of evidence of the participancy of the appellants, grantees, in the alleged fraudulent intent of the grantor. The theory of the court in sustaining the demurrer was that such evidence was necessary, and we would probably be required to presume that the theory thus indicated was followed to the close. But since the appellee did not stand upon the ruling upon demurrer, and availed himself of the privilege of filing an additional paragraph, upon which he failed by reason of a finding which would have been fatal to his cause if the ruling upon demurrer had not been against him, he was certainly not harmed by that ruling. He had, upon the additional paragraph, every opportunity to show a fraudulent intent on the part of said grantor that he could have had upon the original paragraph, or that he could now have if a new trial

were permitted for the error in sustaining said demurrer.

Counsel for appellee do not advise us in what respect "the substantial rights of" their client are affected by the ruling of which they complain, and we have been unable to discover wherein an injury was done to such rights. It is true that as the record stood when the ruling was made, the error was prejudicial, but, like many errors which may be waived or be cured, it is found that by the subsequent proceedings the appellee had no cause of action. That conclusion was reached upon a pleading filed by the appellee, and after he had received every advantage from the evidence that was open to him under the pleading which had gone down under the demurrer. Having filed an additional paragraph of complaint, the appellee occupied no different position than if he had filed both paragraphs at one time and one paragraph had failed upon demurrer.

The appellee's contention is that this court may not go to the special findings to learn that he was not harmed by the ruling. This contention is not supported by the decisions which hold that where the finding is general the court will not go to the evidence to ascertain whether the party was harmed by an erroneous ruling upon pleadings. One reason for the rule in those cases is that this court does not weigh the evidence; upon this question the trial court has weighed the evidence and has distinctly found that the appellee had no cause of action under the pleading in question. Nor do we think the argument sound that the special finding is in the record only for the purpose of testing the accuracy of the conclusions of law. It is true that one against whom conclusions of law are stated upon a special finding of facts may, upon a motion for a new trial, attack the correctness

of the facts found, but where that is not done the facts are certainly to be accepted as established for all purposes.

Counsel state their proposition as follows: "But it matters not what is set forth in the special finding of facts, under our practice where a demurrer has been sustained to a good pleading and there is no other paragraph on file at the time, under which the same facts were admissible in evidence, the Supreme Court cannot, by looking at the evidence or finding of the court pronounce the error harmless. See *Moyer* v. *Brand*, 102 Ind. 301; *New* v. *Walker*, 108 Ind. 365." In the first of these cases it is said: "The case is before us without the evidence, upon the special finding of facts. We cannot look to this special finding of facts to pronounce the error harmless, on the ground that the case has been disposed of upon its merits. If the answer had been allowed to stand, the evidence might have been different, and hence the special finding might have been different." Here it can be said, as we have already said, that the evidence could not have been different nor could the special finding have been different if the paragraph of complaint in question had remained in the issues. We cannot, therefore, regard that case as an authority here. In *New* v. *Walker*, *supra*, it is said: "It is contended by the appellee's counsel that there is a special finding showing that the appellant was not a purchaser in good faith, no harm was done her in sustaining a demurrer to the reply. We cannot concur in this view. The decision in *Sohn* v. *Combern*, 106 Ind. 302, does not sustain the counsel's position. In that case there was no demurrer, but the attack was by the assignment of errors, and, besides, all that was said in that case, which is in any degree revelant to the present sub-

ject, was addressed to the provisions of section 345 of the code respecting the overruling,—not the sustaining,—of demurrers. It cannot be legally possible that if a party's reply presenting facts which completely avoid and nullify the answer of his adversary, is held to be insufficient, the special finding can cure the error. *If his pleading is overthrown, he is not entitled to give evidence in support of the theory which it asserts, and he is, therefore, necessarily and materially injured by the ruling striking it down.*"

The holding in that case was probably correct with reference to the pleading there in question, and we recognize it as correct in any case where the party cannot or may not give evidence, under other pleadings, of the theory advanced by the pleading to which a demurrer has been sustained. The reason for the holding in the case first cited is stated in the words above italicized, and wherever that reason may obtain we readily concur in the holding of that case. In the case before us the complaining party had another pleading under which evidence was indispensable upon an essential theory of the paragraph which went down. That evidence and that theory were of the essence of the cause of action, and having failed upon it he could not have suffered by the adverse ruling. In *Conley* v. *Grove*, 124 Ind. 208, the complaint was bad, yet the case was tried upon it, and a correct finding and judgment upon the facts as agreed upon. There could be no other finding or judgment except that rendered. No good can be accomplished by reversal of the case, as the same finding and judgment would have to be rendered if the cause were reversed and the complaint amended. The correctness of the facts found in the present case not being questioned, we can say, as was said in the case from which we have just

quoted, that the judgment upon another trial must be the same. A different result could only come from the possibility of the appellee being able to add to his evidence of fraud on the part of the grantor. In that contingency the harm to the appellee would arise, not from the demurrer, but from the denial of another opportunity to contest the good faith of his adversary.

So in *McComas* v. *Haas*, 93 Ind. 276, this court looked to the special verdict to ascertain if a ruling upon demurrer to an answer was harmless. So, in *Evansville, etc., Co.* v. *Maddux*, 134 Ind. 571, this court looked to the special verdict to ascertain if a ruling upon demurrer to a paragraph of complaint was harmless.

In *Olds* v. *Moderwell*, 87 Ind. 582, this court looked to the answer of the jury to special interrogatories to determine that the sufficiency of an answer was an immaterial question and as disclosing that upon a vital issue the case was properly decided. So, with reference to a special finding, *Walling* v. *Burgess*, 122 Ind. 299. We take it that where the record affirmatively discloses the presence of an issue irrevocably decided against one who complains of an erroneous ruling, he is not harmed by that ruling if, upon that issue, he must have failed without that error. This conclusion implies, of course, that the complaining party could not have been prejudiced from the want of an opportunity to be heard upon that issue.

The general term of the superior court should have held the error, in sustaining the demurrer, to have been harmless, and should have affirmed the judgment of the special term.

The judgment of the general term is reversed.

Filed May 5, 1896.